IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER ELAN KEITH, JR., | ) | CASE NO. 3:24-CV-01282-JJH |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JEFFREY J. HELMICK |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| WARDEN GEORGE FREDERICK III, | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| Respondent. | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2. Before the Court is the Petition of Christopher Elan Keith, Jr. ("Keith" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Keith is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State of Ohio v. Christopher Keith, Jr.*, Marion County Court of Common Pleas, Case No. 2021-CR-146. Also pending is Keith's Motion to Stay (the "Motion"). (Doc. No. 12.) Respondent filed an Opposition to the Motion. (Doc. No. 13.) For the following reasons, the Motion (Doc. No. 12) is DENIED AS MOOT. In addition, the undersigned recommends the Petition be DISMISSED.

## I.    SUMMARY OF FACTS

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011). The state appellate court summarized the facts underlying Keith's conviction as follows:

1

{¶2} On April 2, 2021, Officer Brett Thomas ("Officer Thomas") of the Marion Police Department was patrolling in the city when he observed a small, two-door BMW commit a traffic violation, causing the officer to initiate a traffic stop of the vehicle. The vehicle was a two-seater with only a driver seat and front passenger seat. The driver was identified as Keith. In addition, there was a young child in the passenger side without any type of child seat or restraint being used. After Officer Thomas approached the BMW, Keith and the child both exited the vehicle with the child climbing over the center console to exit through the driver side door. The child remained with a second officer while Keith spoke with Officer Thomas. Through his conversation with Keith, Officer Thomas began to suspect Keith was under the influence of alcohol. At one point during the encounter, Keith reached across the car in order to retrieve information from the glove compartment. At this time, Officer Thomas went to the passenger side of the vehicle to better observe Keith, who was looking in the glove compartment. From this vantage point, the officer readily observed a clear plastic baggie containing a white powdered substance. As a result of this observation, Keith was placed in handcuffs and ultimately arrested. The white powder was later analyzed and found to contain approximately 27.93 grams of methamphetamine.

{¶3} On April 7, 2021, Keith was indicted by the grand jury on a single count of aggravated possession of drugs in violation of R.C. 2925.11(A)(1), constituting a felony of the second degree. At his arraignment, Keith entered a not guilty plea and the case proceeded to several pretrial conferences in preparation for trial.

{¶4} In September 2021, prior to trial, Keith and his attorney stipulated to Keith taking a polygraph examination regarding his knowledge of the drugs being in the car at the time of the traffic stop. Keith, his attorney, and the prosecutor signed a "Stipulation of Use of Polygraph Examination Results." An examiner with the Bureau of Criminal Investigation ("BCI") conducted the polygraph on September 23, 2021. During the polygraph examination, Keith showed specific reactions to the exam questions that were indicative of deception.

{¶5} A two-day jury trial commenced on April 7, 2022. Three witnesses testified against Keith. Officer Thomas testified regarding the traffic stop and his observing the baggie with a white powdery substance in Keith's vehicle. Kelsey Degen ("Degen"), a forensic scientist with BCI, testified about her analysis of the contents of the baggie and conclusion that the contents were a crystalline substance containing methamphetamine. Lastly, Steven Stechschulte ("Stechschulte"), the polygraph examiner with BCI, testified regarding the polygraph examination administered to Keith and the results indicating deception. The State also introduced a number of exhibits into evidence including the baggie containing the

methamphetamine, video from Officer Thomas's body camera (State's Exhibit 2), various photographs of Keith's car, the BCI chemical analysis report, and the BCI polygraph report. The polygraph stipulation signed by the parties was not offered as evidence for the jury's consideration but was proffered into the record by the parties. Thereafter, the State rested its case. At that time, Keith made a Crim.R. 29 motion for acquittal, which was overruled. Keith testified in his own defense disavowing the polygraph results and claiming he did not know how the baggie containing the methamphetamine came to be in his car.

{¶6} Keith was found guilty of the charge and subsequently sentenced to serve an indeterminate prison term of eight to twelve years of incarceration. The sentencing entry was filed on April 29, 2022. It is from this judgment that Keith appeals submitting two assignments of error, which we consider in reverse order.

*State v. Keith,* 2023-Ohio-3428, ¶¶ 5-6, *appeal not allowed,* 2024-Ohio-163, ¶¶ 5-6, 172 Ohio St. 3d 1465, 225 N.E.3d 1026, and *appeal not allowed,* 2024-Ohio-1228, ¶¶ 5-6, 173 Ohio St. 3d 1443, 230 N.E.3d 1210.

## II.      PROCEDURAL HISTORY

### A.      Trial Court Proceedings

On April 7, 2021, a Marion County Grand Jury indicted Keith on two counts of aggravated possession of drugs (R.C. 2925.11(A)/(C)(1)). (Doc. No. 4-1, Ex. 1.) Keith entered pleas of not guilty to all charges.  (Doc. No. 4-1, Ex. 2.)

The case proceeded to jury trial on April 7, 2022.  On April 8, 2022, the jury returned its verdict, finding Keith guilty of all charges. (*Id*., Ex. 3.)

On April 28, 2022, the state trial court held a sentencing hearing. (*Id*., Ex. 4.) The trial court sentenced Keith to an indefinite prison sentence, consisting of a minimum term of eight years in prison and a maximum term of up to twelve years in prison. (*Id*.)

**B.      Direct Appeal**

On May 11, 2022, Keith, through counsel, filed a timely notice of appeal to the Third District Court of Appeals. (*Id.*, Ex. 5.). In his appellate brief, he raised the following assignments of error:

> I.      Keith's conviction should be reversed because his trial counsel was ineffective in a manner that prejudiced Keith.

> II.     Keith's conviction should be reversed because the trial court should not have admitted Keith's polygraph at trial without instructing the jury about them as required by *State v. Souel*.

(*Id.*, Ex. 6.) The State filed a brief in response. (*Id.*, Ex. 7.)

On September 25, 2023, the state appellate court affirmed Keith's conviction. (*Id.*, Ex. 8.)

On October 30, 2023, Keith, proceeding *pro se*, filed a Notice of Appeal with the Supreme Court of Ohio. (*Id.*, Ex. 9.) In his Memorandum in Support of Jurisdiction, Keith raised the following Propositions of Law:

> I.      Pursuant to the Sixth Amendment to the United States Constitution and Art. I § 10 of the Ohio Constitution a criminal defendant has a right to effective Trial counsel and counsel has a duty to object and request an instruction on the polygraph as required for its admissibility.

> II.     Pursuant to the due process clause of the Fourteenth Amendment and Art. I § 16 of the Ohio Constitution the Trial Court should not have admitted Appellant's polygraph at trial without instructing the jury about them as required.

(*Id.*, Ex. 10.)  The State did not file a response. (*Id.*, Ex. 21)

On January 23, 2024, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). (*Id.*, Ex. 11.)

**C.      Application to Reopen Appeal under Ohio App. R. 26(B)**

On November 3, 2023, Keith filed a *pro se* Application to Reopen Appeal Pursuant to Ohio App. R. 26(B). (*Id.*, Ex. 12.) Keith's Application raised the following argument:

4

> I. Due to trial counsel's ineffectiveness Mr. Keith was denied the right to a jury consisting of a fair cross-section of the community.

(*Id*.) The State did not file a brief in opposition.

On November 23, 2023, the state appellate court denied his Application. (*Id*., Ex. 13.)

On December 12, 2023, Keith, *pro se*, filed a Reconsideration of Opinion and Judgment Entry in Appellant's Application for Reopening of Direct Appeal. (*Id*., Ex. 14.) On January 5, 2024, the state appellate court denied Keith's request because it was both untimely and without merit. (*Id*., Ex. 15.)

On January 11, 2024, Keith, *pro se*, filed a timely notice of appeal with the Ohio Supreme Court. (*Id*., Ex. 16.) In his Memorandum in Support of Jurisdiction, Keith raised the following Proposition of Law:

> Proposition of Law No. I: Appellant contends that the Third Appellate District Court errored [sic] in dismissing his application for reopening without reviewing the record or conducting an evidentiary hearing.

(*Id*., Ex. 17.) The State did not file a response.

On April 2, 2024, the Ohio Supreme Court declined to accept jurisdiction pursuant to S.Ct.Prac.R. 7.08(B)(4). (*Id*., Ex. 18.)

## D. Federal Habeas Petition

On July 15, 2024,[1] Keith filed a Petition for Writ of Habeas Corpus in this Court and asserted the following grounds for relief:

> **GROUND ONE**: Ineffective assistance of trial counsel in violation of 5th, 6th, and 14th Amendments.

> **Supporting Facts**: Trial counsel failed to object to, or file a motion to quash, the jury venire made up entirely of white people, five of which had close affiliations with law enforcement and one who was seated on the jury who admitted during voir dire she was not impartial.

---

[1] Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities. *See Houston v. Lack*, 487 U.S. 266 (1988). While the Petition herein did not arrive at the Court for filing until July 26, 2024, Keith states that he placed it in the prison mailing system on July 15, 2024. (Doc. No. 1-3.) Thus, the Court will consider the Petition as filed on July 15, 2024.

> **GROUND TWO**: Ineffective assistance of trial counsel in violation of the 5th, 6th, and 14th Amendments.
>
> **Supporting Facts**: Trial counsel failed to ask for the mandatory jury instructions on polygraph evidence as required by the Ohio Supreme Court. This failure resulted in petitioner being compelled to submit testimony in the form of "scientific evidence" prior to his actual testimony without the mandatory jury instructions limiting the weight to be given such evidence.

(Doc. 1.)

On October 15, 2024, Warden George Frederick, III ("Respondent") filed his Return of Writ. (Doc. No. 4.) Keith filed a Traverse on November 27, 2024. (Doc. No. 6.)

### III.    MOTION TO STAY

On April 24, 2025, Keith filed a Motion to Stay Proceedings. (Doc. No. 12.) Petitioner moved for a stay due to filing a motion for leave to file a motion for a new trial in the Marion County Court of Common Pleas. On May 29, 2025, Respondent filed his Opposition to Petitioner's Motion to Stay. (Doc. No. 13.) On July 29, 2025, the Marion County Court of Common Please denied Keith's Motion for a New Trial. (*See State of Ohio v. Christopher Keith, Jr.*, Marion County Court of Common Please, Case No. 2021-CR-0146, Judgment Entry – Denying Defendant's Motion for Leave to File a Motion for New Trial dated July 29, 2025.)

Accordingly, Keith's Motion to Stay Proceedings (Doc. No. 12) is DENIED AS MOOT.

### IV. EXHAUSTION AND PROCEDURAL DEFAULT

**A.    Legal Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b),(c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990).

6

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). A claim may become procedurally defaulted in two ways. *Id.* First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.; see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[2] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.") This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are

---

[2] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp.2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*. In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.* Where there is strong evidence

8

of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v.LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S.722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). *See also Jones v. Bradshaw*, 489 F. Supp.2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 2012 WL 3711552 at * 7 (6th Cir. Aug. 29, 2012).

**B.  Application to Petitioner**

Respondent argues Keith's First Ground is procedurally defaulted and should be barred from merit review due to his failure to fairly present it before the Ohio courts. (Doc. No. 4 at 6.) Respondent states Keith's First Ground raises an ineffective assistance of counsel claim based on counsel's failure to object to the jury venire made up of white people, many of which had affiliations with law enforcement, and one that admitted she was not impartial, was never raised before any Ohio court. (*Id*. at 8-9.) Respondent contends Keith's App. R. 26(B) application raised an ineffective assistance of appellate counsel claim based on appellate counsel's failure to raise trial counsel's deficiency for failing to object to the size of the

9

jury venire, which is different than the First Ground raised here. (*Id*. at 10.) Respondent asserts habeas corpus grounds must be presented under the same constitutional theory and same facts that were presented to the state courts, which did not happen here. (*Id*., pp. 10-11.) Respondent argues Keith cannot excuse his defaulted ground based on ineffective assistance of appellate counsel because that claim is itself procedurally defaulted. (*Id*. at 11.) Finally, Respondent states Keith has not alleged any new evidence that would demonstrate actual innocence. (*Id*. at 12.)

Keith argues he fairly presented the issues in this case to the state courts. (Doc. No. 6 at 15.) He claims he used language that established the violation of constitutional rights he alleges. (*Id*. at 16-17.) Keith states he was "entitled to a jury venire made up from a cross-section of the community, but didn't get it" which should have gotten "de novo review". (*Id*. at 17-18.) Keith contends he gave fair notice to the Court of Appeals and County Prosecutor and non-response to his application by the prosecutor indicated no confusion over the issue. (*Id*. at 19.) Keith agrees that his First Ground could have been raised on direct appeal. (*Id*. at 20.) Keith states that appellate counsel "wouldn't raise it" which is why he raised it in his application to reopen. (*Id*.) Keith states the appellate court "dismissed the claim without the prosecutor's input, without conducting the required de novo review, and without scheduling an evidentiary hearing or explaining why one wasn't necessary 24 days later by illegally conflating the two-step process required under Leyh." (*Id*. at 21.) Keith argues the appellate court focused on the people who did not make up the jury venire, ignoring the fact that the jury venire did not represent a fair cross section of the community. (*Id*. at 24-25.) Keith contends he did not know drugs were in the car and is "factually innocent" and offers a discussion of evidence presented at trial. (*Id*. at 26-29.)

Here, Keith did not raise his First Ground on direct appeal. Keith raised his First Ground in his Rule 26(B) Application.  (Doc. No. 4-1, Ex. 12.) The Sixth Circuit has held that denying a Rule 26(B) application imposes a procedural bar to consideration of the claim. *Davie v. Mitchell*, 547 F.3d 297, 312

(6th Cir. 2008). In *Davie*, petitioner's substantive "acquittal first" claim was found procedurally defaulted. 547 F.3d at 312. Davie argued his "acquittal first" claim was first raised in his Rule 26(B) application for reopening and had therefore been properly substantively raised. *Id*. The Sixth Circuit disagreed, stating:

> the Ohio courts determined that Davie failed to demonstrate a "genuine issue" that his appellate counsel was ineffective for failing to raise [the "acquittal first"] claim, the courts refused to open Davie's direct appeal, thereby imposing a procedural bar to consideration of the claim. As a consequence, Davie's substantive "acquittal-first" claim is procedurally defaulted . . .

*Id.* Importantly, the Sixth Circuit stated, "If the application to reopen is granted, the case proceeds as on initial appeal." *Id*., citing Ohio App. R. 26(B)(7). Here, as in *Davie*, the Ohio courts declined to open Keith's direct appeal, effectively imposing a procedural bar on the claim.

Despite this failure, Keith can obtain merits review if he can show both cause and prejudice. *See Maupin*, 785 F.2d at 138–39. To show cause, an external factor must be shown to impede efforts to comply with the procedural rule. *See Franklin*, 434 F.3d at 417. Prejudice is not shown unless Keith demonstrates that there is a "reasonable probability" that the outcome would have been different. *See Mason,* 320 F.3d at 629. Here, Keith asserts that he did "fairly present" this claim in his App.R. 26 application, which the court denied. (Doc. No. 6 at 24-25.) Because the court denied Keith's application, the claim was not substantively raised. *See Davie*, 547 F.3d at 312. The Court finds Keith has not demonstrated cause.

In the absence of cause, a court need not reach the issue of prejudice. *See Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000); *Sandridge v. Buchanan*, 1:16CV2299, 2017 WL 2255378, at *11 (N.D. Ohio April 27, 2017); *Grp. v. Robinson*, 158 F. Supp. 3d 632, 651 (N.D. Ohio 2016).

Finally, despite Keith's assertion that he is "factually innocent", he proffered no new, reliable evidence to support actual innocence. (Doc. No. 6 at 26.) The Court finds Keith has not demonstrated he is entitled to the actual innocence exception.

11

The Court recommends finding Keith's First Ground procedurally defaulted.

## V. REVIEW ON THE MERITS

### A. Legal Standard

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court. *See Parker v. Matthews*, 567 U.S. 37, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v. Warren*, 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir.2005). Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker*, 567 U.S. at 48-49; *Howes v. Walker*, 567 U.S. 901, 132 S.Ct. 2741, 183 L.Ed.2d 612 (2012). *See also Lopez v. Smith*, —— U.S. ——, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a

specific legal rule that this Court has not announced.'" (quoting *Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013))).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* *See also Shimel*, 838 F.3d at 695. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,* 529 U.S. at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fair-minded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id.* at 786 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 785. The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice

systems" and does not function as a "substitute for ordinary error correction through appeal." *Id.* (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

### 1. Ground One

In Ground One, Keith raises an ineffective assistance of counsel violation due to counsel's failure to object to the jury venire made up of all white people, some with law enforcements connections and one that admitted bias. (Doc. No. 1-1, p. 18.) Keith argues trial counsel "had an essential duty to challenge the all-white jury . . ." and claims the "11 white venirepersons" were "harboring racial bias." (*Id.* at 18-20.) Keith states one jury person admitted she was not impartial. (*Id.* at 18.) Keith contends one venireperson stated that he could be impartial, but he wasn't sure about the other white venirepersons. (*Id.* at 19.) Keith alleges that as a black man he did not have an impartial jury. (*Id.*) Keith argues trial counsel violated his duty to challenge the all-white jury, and he breeched that duty. (*Id.* at 23.)

Respondent argues Keith failed to demonstrate that any of the jurors were biased against him. (Doc. No. 4 at 14.) Respondent states that Keith's own unsupported opinion is not enough to prove the jurors were biased. (*Id.*) Respondent maintains counsel cannot be held ineffective for failing to do a futile act or raise a meritless issue. (*Id.*, citing *Krist v. Foltz*, 804 F.2d 944, 946-47 (6th Cir. 1986); *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998); *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).)

In his Traverse, Keith reiterates the arguments raised in his initial brief. (Doc. No. 6.) Keith argues trial counsel should have addressed not having any black people on the jury. (*Id.* at 33.) Keith claims this violation of duty resulted in "at least one white juror being seated who admitted she was not impartial."

14

(*Id*., citing Doc. No. 5-1, Page ID 409-410, Trial Transcript Vol. I.) Keith states the trial court and trial counsel never followed up on this statement. (*Id*., at 33-34.) Keith alleges trial counsel had "reasonable suspicion of racial bias" when one venireperson noted the lack of black people in the jury pool. (*Id*. at 34, citing Doc. No. 5-1, Page ID 331-32, Trial Transcript Vol. I.)

As discussed above, Keith's First Ground was not considered on the merits by the state courts. Even if it was, the First Ground is meritless. A finding of deficient trial counsel requires the petitioner to "prove that counsel's representation was not merely below average, but rather that it 'fell below an objective standard of reasonableness.'" *United States v. Dado*, 759 F.3d 550, 563 (6th Cir. 2014) (quoting *Strickland*, 466 U.S. at 688). Courts "employ a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* (quoting *Strickland*, 466 U.S. at 689); *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "Strategic decisions of defense counsel are 'virtually unchallengeable.'" *Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 849 (6th Cir. 2017) (quoting *Buell v. Mitchell*, 274 F.3d 337, 359 (6th Cir. 2001)); *see also Goldman v. Anderson*, 625 F.2d 135 (6th Cir. 1980) (stating that a failure to object, when it is a tactical decision by counsel, without more, will not provide a basis for habeas relief.).

"[D]ecisions about the content of questions during *voir dire* are typically left to the discretion of the trial counsel." *Mahdi v. Bagley*, 522 F.3d 631, 637 (6th Cir. 2008) citing *Lear v. Cowan*, 220 F.3d 825, 829 (7th Cir.2000) (holding that trial counsel's failure to voir dire jurors on racial bias was not "unprofessional, subpar representation per se," and noting that "there are tactical reasons why a lawyer would not want to direct the jurors' attention to the interracial character of the crime . . .") "Counsel is . . . accorded particular deference when conducting voir dire. An attorney's actions during voir dire are considered to be matters of trial strategy. A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with

15

obvious unfairness." *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001) (internal citations omitted; citing several authorities in support).

In *Hughes v. Myers,* No. 3:20-CV-00765, 2021 WL 1293874, at *9 (M.D. Tenn. Apr. 7, 2021), the petitioner alleged trial counsel rendered ineffective assistance of counsel by failing to explore racial bias during jury selection by not questioning the all-white jury about racial bias during *voir dire*. (*Id.*) The court disagreed, finding that trial counsel did not have a duty to ask about racial bias because it is a strategic decision. (*Id.*) The court explained that "[g]eneric questions about juror impartiality may not expose specific attitudes or biases that can poison jury deliberations. Yet more pointed questions 'could well exacerbate whatever prejudice might exist without substantially aiding in exposing it.'" (*Id.*, quoting *Rosales-Lopez v. United States*, 451 U.S. 182, 195 (1981)).

Here, Keith has not met his burden of showing trial counsel's conduct fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. Trial counsel did not have a duty to object to the all-white jury as Keith contends, rather voir dire questions fall within counsel's discretion. *Mahdi*, 522 F.3d at 637. Moreover, a review of the trial transcript reveals that counsel did question the juror that brought up the fact the jury was made up of all white people. During this portion of voir dire, Keith's counsel was questioning potential jurors and asking what makes a good juror and whether specific potential jurors thought they would or would not make good jurors. (Doc. No. 5-1, PageID 329-332.) The transcript reads as follows:

> MR. SCARSELLA: Let me ask you a question. And I didn't mean to interrupt you. I'm sorry.
>
> PROSPECTIVE JUROR: I was just saying, you know, a jury of your peers, it's, you know, you got a lot of white faces in here with a person of color is the defendant.
>
> MR. SCARSELLA: A little different, isn't it?
>
> PROSPECTIVE JUROR: Which doesn't seem quite right.

16

> MR. SCARSELLA: Okay. Why do you think that that doesn't seem quite right?
>
> PROSPECTIVE JUROR: Specifically, like you said, it's a jury of your peers. And I don't think that most people in this room have a whole lot in common with Mr. Keith.
>
> MR. SCARSELLA: Why not?
>
> PROSPECTIVE JUROR: Well we're white and he's not.
>
> MR. SCARSELLA: And that makes a difference, doesn't it?
>
> PROSPECTIVE JUROR: Abs – ever since the beginning of time.
>
> MR. SCARSELLA: Are you going to be able -- tell me how that's going to affect your ability to listen to this evidence?
>
> PROSPECTIVE JUROR: It won't affect me. I just wonder –
>
> MR. SCARSELLA: Other people -- other people's –
>
> PROSPECTIVE JUROR: It might affect other people.

(*Id.*, PageID 330-32.) Here, Keith's counsel was able to address the fact that all venirepersons were white and Keith was black. He was able to question the potential juror and steer the conversation in the direction he thought necessary, which was within his discretion. *Mahdi,* 522 F.3d at 637.

Further, the potential juror that Keith contends stated she was "not impartial" had nothing to do with race and the prosecutor conducting vior dire asked additional questions of this juror to clarify her statements. The transcript states:

> MR. GROGAN: Okay. Like I said, there's no right or wrong answers. Just – just answers.
>
> PROSPECTIVE JUROR: It's a -- I have a hard time with anything dealing with drugs and I'm pretty biased about that.
>
> MR. GROGAN: Okay.
>
> PROSPECTIVE JUROR: Really -- (inaudible).

17

> MR. GROGAN: Okay. What -- what do you mean? How?
>
> PROSPECTIVE JUROR: Drugs are bad.
>
> MR. GROGAN: Yep.
>
> PROSPECTIVE JUROR: Why -- you know, why? Yeah. I just kind of -- (inaudible) -- with that.
>
> MR. GROGAN: Okay. Okay.
>
> PROSPECTIVE JUROR: And I'm sorry, I just do.
>
> MR. GROGAN: No. That's a thing. This is why we do this.
>
> PROSPECTIVE JUROR: Yeah.
>
> MR. GROGAN: This is exactly -- these answers are exactly why we're going through this process.

(Doc. No. 5-1, PageID 409-410.) Here, counsel questioned a potential juror on her statement that she had a hard time dealing with situations involving drugs because "drugs are bad." (*Id*.) Trial counsel did not have a duty to ask additional questions or object. See *Goldman*, 625 F.2d 135. The prosecutor and trial counsel had the opportunity to question jurors, explore potential racial bias, and challenge jurors. (See Doc. No. 5-1.) Moreover, counsel did exercise challenges for cause as well as preemptory challenges excusing potential jurors from serving. (*Id*. at 356-358, 438-39.) Keith has not met his burden of showing his trial counsel's conduct during voir dire fell below an objective standard of reasonableness. Trial counsel's questions and challenges to specific jurors fell within his discretion. *Mahdi*, 522 F.3d at 637.

Keith's First Ground is without merit. It is therefore recommended that Ground One be DISMISSED.

### 2. Ground Two

In Ground Two, Keith argues trial counsel rendered ineffective assistance of counsel by failing to ask for a mandatory jury instruction concerning polygraph evidence. (Doc. No. 1-1 at 24.) Keith claims

18

trial counsel objected to the stipulated polygraph evidence because it was not signed by him, however, prior counsel had signed it. (*Id*. at 25.) Keith argues this thinking is contrary to the law, and he should have instead made objections "based on legitimate arguments." (*Id*.) Keith contends that when his objections failed, counsel should have demanded "mandatory instructions limiting the weight to be given such evidence." (*Id*.) Keith states the court did not provide the mandatory instructions, counsel never demanded it, and he was found guilty based in large part due to the polygraph evidence. (*Id*.) Keith argues counsel should have made an objection based on the fact Keith was taking "psych medications" at the time the polygraph was administered. (*Id*. at 26.) Keith contends counsel should have been aware of a case two years prior where a polygraph score of -14 was inconclusive, but in his case, it was an indication of deception. (*Id*. at 27.)

Keith argues counsel's failure to demand a jury instruction on polygraph evidence amounted to a Fifth Amendment violation of his right against self-incrimination as well as ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments. (*Id*. at 29.) Keith insists the trial would have had a different result had his counsel been effective because he would have discovered exculpatory evidence, Keith would not have been "groomed to agree to take a polygraph test", the polygraph examiner would have been informed that Keith was on "psych-meds" to treat anxiety and depression prior to taking the test, which would have led to an inconclusive polygraph result. (*Id*. at 32-33.)

Respondent argues the polygraph evidence was admitted by stipulation of the parties, Keith's counsel was given the opportunity to cross examine the polygraph examiner, and the trial court provided jury instructions regarding assessing witness credibility and assigning weight to testimony, including that of the expert witnesses. (Doc. No. 4 at 17.) Respondent contends the court of appeals was correct when it determined the trail court's jury instructions conformed with both the spirit and language of the *Souel* decision. (*Id*. at 21.) Respondent states that a state court's interpretation of state law binds a federal court

19

sitting in habeas corpus. (*Id*.) Respondent argues that because Keith cannot demonstrate error in the jury instructions provided by the trial court, he cannot make the requite showing of prejudice under *Strickland*. (*Id*.)

In his Traverse, Keith claims the jury instruction on polygraph evidence was mandatory, per *Souel*, and introduction of the polygraph evidence essentially compelled him to testify against himself in the State's case in violation of the Fifth Amendment. (Doc. No. 6 at 35.)  Keith alleges the court of appeal's rejection of this claim was not reasonable because it used the wrong standard of review. (*Id*. at 36.) He contends the jury was led to believe they could consider the polygraph evidence as proof of guilt. (*Id*.) Keith alleges Respondent is incorrect that the jury instructions provided comply with the spirit and language of *Souel*, and that a state court's interpretation of state law binds a federal habeas court. (*Id*. at 40.) Keith disagrees that the jury instructions complied with the language from *Souel*. (*Id*. at 40-42.) Keith argues he can show prejudice due to several "inaccuracies" during trial. (*Id*. at 42-46.)

Keith raised an ineffective assistance of counsel claim based on counsel's failure to request a limiting jury instruction on polygraph evidence the parties stipulated to for admission through the state courts. (Doc. No. 4-1, Ex. 6, 10.) The Third District Court of Appeals, the last court to decide the issue, made the following findings:

> {¶7} In his second assignment of error, Keith contends the trial court erred by failing to give to the jury the instruction required by paragraph four of the syllabus in *State v. Souel*, 53 Ohio St.2d 123 (1978). "In *Souel*, the Ohio Supreme Court held that the results of a polygraph examination are 'admissible in evidence in a criminal trial for purposes of corroboration or impeachment' provided certain specified conditions are observed." *State v. Curry*, 3d Dist. Allen No. 1-15-05, 2016-Ohio-861, ¶ 73, quoting *Souel* at syllabus. Those conditions include: a written stipulation by the parties providing for the defendant to submit to the examination and for the subsequent admission at trial of the graphs and examiner's opinion thereon; the defendant being afforded the right to cross-examine the polygraph examiner; and the court providing the jury with an instruction to the effect that the examiner's testimony does not tend to prove or disprove any element of the crime with which the defendant is charged but

that it is for the jurors to determine what weight and effect such testimony should be given. *Souel*, at paragraphs one, three and four of the syllabus.

{¶8} "Trial courts have a responsibility to give all jury instructions that are relevant and necessary for the jury to properly weigh the evidence and perform its duty as the factfinder." *State v. Shine-Johnson*, 10th Dist. Franklin No. 17AP-194, 2018-Ohio-3347, ¶ 25. As a general matter, "[j]ury instructions are within the trial court's discretion, which an appellate court will not disturb absent an abuse of discretion." *State v. Orians*, 179 Ohio App.3d 701, 2008-Ohio-6185, ¶ 10 (3d Dist.). Here, however, Keith did not object when the trial court failed to provide a specific instruction regarding the polygraph examination. In fact, Keith's defense counsel did not offer any dissatisfaction with the instructions to be given to the jury. (Apr. 8, 2022 Tr. at 41-42). Because Keith did not object to the jury instructions, he has forfeited all but plain error on appeal. *See State v. Kean*, 10th Dist. Franklin No. 17AP-427, 2019-Ohio-1171, ¶ 65.

{¶9} For plain error to apply, the trial court must have deviated from a legal rule, the error must be plain, i.e., an obvious defect in the proceeding, and the error must have affected the defendant's "substantial rights." *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). "[T]o demonstrate that the trial court's error affected a substantial right, the defendant must establish that there is a reasonable probability that, but for the trial court's error, the outcome of the proceeding would have been otherwise." *State v. Sutton*, 3d Dist. Seneca No. 13-21-11, 2022-Ohio-2452, ¶ 50. We take "[n]otice of plain error * * * with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶10} The trial court did not give a jury instruction using the precise language from *Souel.* However, the trial court did instruct the jury regarding assessing witness credibility and assigning weight to the various testimony. For instance, prior to the presentation of the evidence in this case, the trial court advised the jury as follows:

> Testimonial evidence is where a witness takes the stand, is administered an oath and testifies either to the facts that he or she has seen or heard or may have some specialized knowledge about. It is for you to decide the credibility of the witnesses and the weight to give their testimony. In making these decisions, you will apply the test of truthfulness that you apply in your daily lives. These tests include the appearance of each witness on the stand, the witness's manner of testifying, the reasonableness of the testimony, the opportunity the witness had to see, hear, and know the things about which he or she is testify[ing], and

21

all the – and the witness's accuracy of memory, frankness or lack of it, intelligence, interest and bias, if any, together with all the facts and circumstances surrounding the testimony. In applying these tests, you will assign to the testimony of each witness such weight as you deem proper. You are not required to believe the testimony of any witness simply because the testimony was given under oath. You may believe or disbelieve all or any part of the testimony of any witness.

(Apr. 7, 2022 Tr. at 236-237).

{¶11} Additionally, after Stechschulte was asked a number of introductory questions regarding his background and qualifications, the trial court stated the following:

[Trial Court]: [Counsel], do you wish to voir dire this witness on his qualifications to be determined an expert polygraph examiner?

[Defense Counsel]: Not for [the] purposes [of] today, Your Honor. We'll stipulate to his expert status.

[Trial Court]: Very good.

Then without objection this witness will also be qualified as an expert * * * in the fields of polygraph examination and analysis.

Ladies and gentlemen, the same instruction I gave you with regard to expert testimony and the ability for * * * that expert to testify about opinion evidence [applies here]. Normally, a witness may not testify as to an opinion but if their training and experience is such that they are declared an expert then they are able to render an opinion in the field of their expertise for whatever weight you decide to give it.[1]

(Apr. 7, 2022 Tr. at 314).

{¶12} As part of its final instructions to the jury, the trial court advised:

Generally speaking, a witness may not express an opinion; however, in certain circumstances, a witness may have been allowed to express their opinion because of their education, knowledge and/or experience. Such testimony is

22

admitted for whatever assistance it may provide to help you arrive at a just verdict.[2]

(Apr. 8, 2022 Tr. at 68).

{¶13} The collective nature of these instructions was sufficient to advise the jurors it was their obligation to weigh the evidence and the testimony of each witness, including the two experts who testified. The trial court was clear that the expert witnesses could express their opinion because of their education, knowledge and experience. The jury was to evaluate the quality of this testimony by applying the usual tests, including things such as the appearance of the witness on the stand, the manner of testifying, the reasonableness of the testimony, the intelligence, interest and bias of the witness.

{¶14} After reviewing the testimony and evidence presented at trial, we are not persuaded the trial court committed plain error by failing to give the specific instruction under *Souel* that "the examiner's testimony does not tend to prove or disprove any element of the crime with which a defendant is charged, and that it is for the jurors to determine what weight and effect such testimony should be given." *Souel*, 53 Ohio St.2d, at paragraph four of the syllabus. We come to this conclusion because the totality of instructions provided by the court specifically indicated it was up to the jury to decide what weight to give to each expert's testimony and because there was substantial, other evidence demonstrating that Keith knowingly possessed the illegal drugs found in his vehicle. *See State v. Vielma*, 3d Dist. Paulding No. 11-11-03, 2012-Ohio-875, ¶ 40 (finding substantial evidence of the defendant's guilt was sufficient to overcome plain error in the trial court's failure to instruct the jury regarding the defendant's polygraph examination).

{¶15} In this case, Keith was the owner of the small BMW coupe he was driving at the time of the traffic stop. (State's Ex. 2). This vehicle had only a front seat and Keith's young daughter was the only passenger. (*Id.*); (Apr. 7, 2022 Tr. at 267). Officer Thomas testified he observed the baggie with white powder wedged between the center console and the passenger side seat. (State's Ex. 2); (Apr. 7, 2022 Tr. at 259-261). This part of the officer's body camera video was expressly shown to the jury by the prosecutor. (*Id.*); (*id.*). Throughout the interaction with Officer Thomas, Keith attempted to draw attention away from the vehicle. For example, he had his daughter exit the car through the driver's side door rather than from the passenger side, which would have exposed the baggie to view by the officers. Additionally, he removed his coat and dropped it in the street along with various other items and a bag of food he attempted to hand the officer. (State's Ex. 2). At trial, Keith attempted to disavow knowledge of the drugs in the car by insinuating other individuals had access to the

23

vehicle. (Apr. 8, 2022 Tr. at 13, 23). These efforts were contradicted by his testimony that he reached over the center console (and thus over the baggie of drugs) to put a can of beer on the passenger side floorboard. (*Id.* at 17). Additionally, Keith testified that, after leaving a local restaurant, he helped his daughter get in the passenger side of the vehicle (arguably a vantage point from which he would have observed the baggie in the same manner Officer Thomas saw the baggie) but later amended this statement to indicate he had the girl enter through the driver-side door. (*Id.* at 26-28). In sum, the results of polygraph examination served to corroborate the evidence against Keith and did not independently establish the element of Keith's knowledge of the drugs in his vehicle. Additionally, the polygraph results impeached Keith's testimony that others had access to the vehicle and may have left the drugs behind.

{¶16} The second assignment of error is overruled.

{¶17} In his first assignment of error, Keith complains his trial counsel failed him in three instances. First, he claims the State established venue only during redirect examination of Officer Thomas and trial counsel failed to object. Second, Keith contends counsel should have requested a jury instruction pursuant to *Souel* regarding the use of polygraphic evidence at trial. Finally, he contends counsel should have requested a jury instruction relating to the jury's use of expert testimony. We will address each contention in due turn.

{¶18} "In criminal proceedings, a defendant has the right to effective assistance of counsel under both the United States and Ohio Constitutions." *State v. Evick,* 12th Dist. Clinton No. CA2019-05-010, 2020-Ohio-3072, ¶ 45. A defendant asserting a claim of ineffective assistance of counsel must establish: (1) counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole,* 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 689. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie,* 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance of counsel. *State v. Frazier,* 61 Ohio St.3d 247, 255 (1991). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley,* 42 Ohio St.3d 136, 141-142 (1989).

{¶19} Prejudice results when "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Bradley* at 142, quoting *Strickland* at 694. " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id.,* quoting *Strickland* at 694.

\*\*\*

{¶24} Next, Keith complains that, although his trial counsel objected to the admission of the polygraph examination results, counsel should have requested an instruction regarding the jury's use of the results of the polygraph examination pursuant to *Souel*. In addressing Keith's second assignment of error we found no error in the instructions the trial court provided to the jury relating to the polygraph examination. Consequently, we find no error by trial counsel in failing to request a more precise instruction.

{¶25} Finally, Keith asserts his trial counsel should have objected to the court's failure to provide an instruction specifically informing the jury how to weigh the expert testimony of Stechschulte. Again, we previously found no error in the trial court's instructions relating to the testimony of the experts. Thus, we find the lack of an objection is not indicative of ineffective assistance of trial counsel.

---

[1] This was essentially the same instruction the trial court provided to the jury after Degen was qualified as an expert witness in the area of chemical identification and analysis. (See Apr. 7, 2022 Tr. at 297).

[2] This instruction was drawn from Ohio Jury Instruction, CR 409.21 ¶ 1. The trial court, however, did not provide the specific instruction from paragraph three of this section regarding how to weigh expert testimony. Nevertheless, the court did provided appropriate guidance on this matter in its general instructions.

*Keith*, 2023-Ohio-3428, ¶¶ 7-16.

In order to establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair. *Id*. To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

25

different." *Id.* at 694. In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy. *Id.* at 689. *See also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

As explained by the United States Supreme Court:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ——, 129 S.Ct. 1411, 173 L.Ed.2d 251. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ——, 129 S.Ct. 1411, 173 L.Ed.2d 251. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105. *See also Kennedy v. Warren*, 428 F. App'x 517, 520 (6th Cir. 2011); *Phillips v. Sheldon*, Case No. 3:12-cv-01609, 2014 WL 185777, at **14-15 (N.D. Ohio Jan. 16, 2014).

Here, the Court finds the appellate court reasonably determined that the trial court did not commit plain error by failing to give the specific instruction under *Souel*. The appellate court explained that it came to this conclusion "because the totality of instructions provided by the court specifically indicated it

26

was up to the jury to decide what weight to give to each expert's testimony and because there was substantial, other evidence demonstrating that Keith knowingly possessed the illegal drugs found in his vehicle." *Keith*, 2023-Ohio-3428, ¶14, citing *State v. Vielma*, 3d Dist. Paulding No. 11-11-03, 2012-Ohio-875, ¶40 (finding substantial evidence of the defendant's guilt was sufficient to overcome plain error in the trial court's failure to instruct the jury regarding the defendant's polygraph examination). "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Thus, this Court is precluded from disturbing the appellate court's conclusions concerning the jury instructions.

The appellate court addressed Keith's assertion that his trial counsel was ineffective due to his failure to request the specific instruction in *Souel*. As the court of appeals noted, the totality of instructions provided by the trial court met the *Souel* standard for jury instructions concerning polygraph evidence, thus counsel's lack of objection to the same cannot demonstrate deficient performance. Due to this reasonable finding by the appellate court, Keith cannot demonstrate prejudice as required by *Strickland*. Given the evidence presented, it is highly unlikely that had counsel objected and the trial court given the *Souel* instruction word for word, that the outcome of the trial would have been different. *Morrow*, 977 F.2d at 229. Keith has not met his burden.

Keith's Second Ground is without merit. It is therefore recommended that Ground Two be DISMISSED.

## VI. CONCLUSION

For all the reasons set forth above, Keith's Motion to Stay (Doc. No. 12) is DENIED AS MOOT. In addition, the undersigned recommends the Petition be DISMISSED.

Date: October 15, 2025              *s/ Jonathan Greenberg*
                                    Jonathan D. Greenberg
                                    United States Magistrate Judge

## <u>OBJECTIONS</u>

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).